IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| AMANDA E. WELLS, ) | |
| ) | CASE NO. BK18-81617 |
| Debtor(s). ) | A18-8339 |
| AMANDA E. WELLS, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION and FEDLOAN SERVICING, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Trial was held in Omaha, Nebraska, on January 7, 2020, on the debtor's complaint to determine the dischargeability of student loan indebtedness. Wesley H. Bain, Jr., appeared for the plaintiff, and Douglas R. Semisch appeared for the defendants. The parties were given time to file written final arguments, and the matter is now ready to be decided.

The plaintiff/debtor in this case is seeking to discharge student loan debt. For the reasons discussed below, the plaintiff's complaint is denied.

### *BACKGROUND FACTS*

The evidence admitted at the trial was not subject to material dispute and the uncontroverted facts are as follows:

1. Plaintiff is the debtor in the above-captioned Chapter 7 case which was filed on November 7, 2018. The U.S. Department of Education is an agency of the United States and is the source of the consolidated educational loans made to the plaintiff.

2. Plaintiff is currently 36 years old and earned a master's degree in clinical counseling in 2018.

3. Plaintiff is unmarried and has two children ages 11 and 12. The children have special needs which, in part, have influenced the plaintiff's employment decisions. Plaintiff was divorced from the children's father when the children were very young. He relinquished his parental rights and accordingly does not pay child support, nor does he pay alimony to Plaintiff. Both children qualify for Medicaid for their health care.

      4. Plaintiff testified that her daughter is autistic and is in special education classes at school due to delays in social language, social skills, and restricted behaviors and interests. She testified that her daughter is emotionally volatile and regularly experiences "explosive meltdowns" during which she becomes violent.

      5. Plaintiff testified that her son has suffered four brain injuries. According to some medical information attached to plaintiff's earlier motion for summary judgment, her son was born with scaphocephaly -- a premature fusing of the skull bones, resulting in a deformed, elongated skull. Two of the brain injuries resulted from cranial reconstruction surgeries, and two resulted from concussions. As a result, he has behavioral issues, including moodiness and difficulties with impulsivity, academic performance, and fine motor skills. Plaintiff testified that in an effort to treat these issues, he has undergone neurotherapy treatment to regulate the electrical patterns in his brain. For a time, he underwent these treatments three times a week. He currently is on a six-month break from the treatments to allow for healing and will be re-evaluated in April 2020. That evaluation will determine when and how frequently the treatments should resume, although Plaintiff anticipates he will need at least two treatments per month. This is a "new" treatment method which does not yet have an established record of success sufficient to persuade all insurance companies to pay for it. As a result, Medicaid does not cover it, so Plaintiff pays for the treatments ($125 each) herself because she is pleased with the positive results the treatments have achieved for her son.

      6. Plaintiff has not fully explored whether she would be entitled to Social Security benefits due to her children's medical conditions.

      7. Plaintiff works full-time (40-50 hours per week) in Omaha, Nebraska, as a mental health therapist for the Stephen Center HERO program, which provides substance abuse treatment for low-income and homeless individuals. She assists clients who are dually diagnosed with both substance abuse and mental illness. In this position, she earns a salary of approximately $36,000 annually. In addition to the required paycheck deductions for Social Security, Medicare, and state unemployment insurance, the cost of her personal health insurance is deducted from her check. She does not take any deductions for life insurance or a retirement plan. Her bi-weekly take-home pay is approximately $1,200.

      8. Plaintiff has also recently opened a private counseling practice where she currently sees one client on Saturdays. After paying rent and credit-card processing fees, she earns $37 per session. This does not account for other expenses associated with the business, such as the cost of a business cell phone line, professional licensing, continuing education, and so forth. She testified that her ability to operate this private practice is limited by the fact that she cannot leave her children alone, so they accompany her to the sessions and sometimes cause disruptions that necessitate canceling the session.

      9. Plaintiff and the children live with her parents and have done so for 10 years. She pays rent of $500 to them, but does not pay for utilities (water, sewer, gas, electricity, garbage pickup, internet, cable television), housekeeping supplies, or household maintenance.

10. The family moved to the Elkhorn area of Omaha in 2015. The children began attending public school in the Elkhorn district, but the change in environment was challenging for them. Plaintiff explored options such as transferring them to a different school in Elkhorn or opting in to a smaller school district in Omaha, but was denied on both fronts. She ultimately home-schooled them for the spring 2018 semester, then placed them for the 2018-19 school year in a small Catholic school in Omaha, which they continue to attend.

11. Plaintiff drives a 2004 Honda Odyssey that was given to her by a family member. It replaced a 2005 Toyota Highlander for which she could not afford routine maintenance and which was damaged in an accident in November 2018. She testified that she is more diligent about maintenance for the Honda. She also recently purchased new tires for the vehicle with funds borrowed from her parents.

12. According to the amended Schedules I and J filed by Plaintiff, her monthly expenses exceed her income by $415. At trial, the defendants elicited testimony from Plaintiff clarifying that many of the listed expenses were anticipatory in nature and not actual out-of-pocket spending. For example, she lists monthly rent of $900 and utilities of $150 even though she is not currently paying those amounts. She testified those would be realistic expenses if she were able to rent a home for her family and move out of her parents' home. Likewise, she listed food and household supply expenses of $500, although she testified that she actually spends $180 for food now. Her Schedule J reflects anticipated expenditures in that category if and when she and her children move into their own home.

13. Plaintiff's monthly expenses also include $500 for childcare and the children's education. Plaintiff testified that the tuition for both children is $5,000. This year, the Archdiocese of Omaha provided an educational grant of $1,000 per child, and her daughter received a $900 scholarship. Next year, the archdiocesan grant will be $500 per child. Plaintiff testified that she actually paid about $3,200 for tuition this year, and most of that money came from her income tax refund which is not reflected in her monthly income on Schedule I.

14. Plaintiff applied for and received federal consolidated loans from the United States Department of Education in July of 2018. At the time, she was out of school and was employed. Plaintiff had various consolidated loan options and selected an income-based repayment program which required initial monthly payments of $56.66. Absent the income-based repayment program, her monthly payments would have been approximately $719 per month.

15. Plaintiff made two monthly payments of $56.66 prior to filing for bankruptcy in November of 2018. She has not made any payments since she filed her Chapter 7 petition.

16. The total amount of federal consolidated loans disbursed to the plaintiff in July of 2018 was $130,238.49. As of December 23, 2019, the unpaid principal was $137,897.68 and unpaid accrued interest was $2,614.83, for a total of $140,512.51.

17. The terms of the income-based repayment program selected by the plaintiff provide that after 25 years of payments based on income, any remaining loan balance will be forgiven. If the unpaid balance of the consolidated loan were to be cancelled after 25 years of participation in the income-based repayment program, the plaintiff would be subject to income tax only if she has assets exceeding the amount of debt being cancelled per 26 U.S.C. §108(a)(1)(B).

18. The terms of the repayment program require the plaintiff to provide annual re-certifications. The amount of the monthly payment can be adjusted based upon the plaintiff's reported circumstances.

19. The declaration of Rhoda Terry presented at trial states that the government offers a variety of repayment programs and that borrowers may switch among the various payment plans. The declaration states that based on the plaintiff's income and expenses, she may be eligible for something called the REPAYE plan, which has a 20-year repayment term and an estimated initial monthly payment of $25. Further, the declaration states that the government offers a Public Service Loan Forgiveness Program that provides for tax-free loan forgiveness after 10 years of on-time payments under one of the income-driven repayment plans while working for the government or a non-profit corporation. Plaintiff's employer is a non-profit corporation.

## *DISCUSSION*

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans[1] "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that her educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of the loan would impose an undue hardship on her or her dependents. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005). "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

---

[1] The parties are in agreement that the student loans at issue qualify as "educational loans" for purposes of 11 U.S.C. § 523(a)(8).

-4-

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted). Each category will be reviewed in turn.

### *Past, Present, and Reasonably Reliable Future Financial Resources*.

The plaintiff is employed in her field of study as a mental health therapist for a non-profit entity. She makes approximately $36,000.00 per year and, because she works for a non-profit, she does not anticipate measurable increases in that base income in the future. However, she has recently begun a private counseling practice where she sees a client on weekends, but the evidence was unclear as to whether she is able to make a profit from this new venture.

The court earlier denied the plaintiff's motion for summary judgment in this case, finding that questions of fact that were an integral part of the totality-of-the-circumstances analysis remained unanswered. Of particular interest to the court were Plaintiff's reasonably reliable *future* financial resources, including her future ability to earn additional income, her future expenses as the children grow older, whether the children's father was able to provide financial or other assistance with the children, the status of a personal injury claim she had, and how continuing to participate in the income-based repayment program would constitute an undue hardship. *See* Order of Nov. 1, 2019 (Fil. No. 24).

Unfortunately, most of those questions remain unanswered. Importantly, no evidence was introduced as to whether there are higher-paying positions available in her career field that would also accommodate her family needs. The Court recognizes that many factors go into the consideration of whether to obtain a higher-paying job, including the effect it may have on her ability to receive Medicaid for the children's health insurance and her entitlement to tax credits. However, Plaintiff did not provide any evidence regarding efforts to seek higher paying employment.

Clearly, part of Plaintiff's past and present financial resources includes the generosity of her parents, as the plaintiff and her children have lived in their home for at least 10 years. Plaintiff testified that she would like to move into a place of her own but cannot afford to do so as her parents subsidize her living expenses (discussed more fully below). Of course, her parents are not under any obligation to continue to assist the plaintiff. However, no evidence was provided as to their desire,

willingness or ability to do so. Therefore, it is unclear whether that generosity will (or will not) be available in the future.

Moreover, Plaintiff testified that she has not applied for or even seriously looked into obtaining supplemental security or disability benefits for the children. She testified about a telephone conversation she had at some time in the past allegedly with an employee of the Social Security Administration and her resulting belief that her income and her children's potential future earnings precluded them from obtaining such benefits. However, this appears to have been a cursory inquiry, and Plaintiff opted not to do any further research into the matter. The defendants submitted into evidence an introductory fact sheet about Supplemental Security disability benefits for children. The Social Security Administration provides this and additional information on its website. Given the children's diagnoses, they may possibly be eligible for benefits, which would certainly reduce some of the financial pressure on Plaintiff.

Plaintiff's bankruptcy schedules reveal she has a personal injury claim resulting from an auto accident but provided little or no information about that claim at the trial. Further, plaintiff acknowledged during her testimony that she receives annual tax refunds of approximately $5,000.00, but did not factor those refunds into her income on Schedule I. At the same time she included in Schedule J some (but not all) of the private school tuition and other expenses she pays with the tax refund.

### *Reasonable and Necessary Living Expenses.*

As the government points out in its brief, the amended Schedule J filed by the plaintiff contains "projected" expenses for housing-related costs that Plaintiff does not currently pay since she is living with her parents. She pays them rent of $500.00 per month and for that gets housing for her family, plus most groceries and housing-related supplies. Included in these projected costs are an additional $400.00 per month for rent, $150.00 for utilities, and an additional $200.00 in food and housekeeping supplies that would not be covered by her parents. Absent those projected expenses, her current monthly expenses are approximately $2,300.00 per month. With net income of $2,752.00 per month, the schedules indicate plaintiff currently has a positive cash flow of around $450.00 per month. Therefore, Plaintiff's current financial resources are sufficient to meet her current living expenses.

Of course, Plaintiff's point is that the calculation of her reasonable and necessary living expenses in the future should include the expenses she and her family would incur living on their own. As set forth in her amended Schedules I and J, which project the additional expense she would incur by moving out of her parents' home, the difference between her projected monthly income ($2752.36) and her projected monthly expenses ($3,168.00) is about $416.00 per month.

With regard to her children, Plaintiff offered little medical evidence of their special needs, or any evidence as to anticipated expenses concerning their care in the future. She stated her opinion that they are unable to be left alone at the present time, and that she fully expects to live with and care for them for the rest of her life, but there is no medical evidence before the court to support this

position. There also was no medical evidence as to the necessity or efficacy of her son's neurotherapy treatment. Yet, her amended Schedule J includes an anticipated expense of $250.00 per month for those treatments. Plaintiff did acknowledge that some insurance companies have started covering the treatment, but Medicaid has not yet agreed to do so.

As indicated, in the fall of 2018, Plaintiff enrolled her children in private school and began paying private school tuition. While Plaintiff testified about the reasons her children are enrolled in private school and her observation that they are better able to function in the smaller and quieter environment, there was no testimony or other evidence presented that private school is necessary for them or that the public school is unable to provide programs beneficial for the children.

### *Other Relevant Facts and Circumstances.*

The defendants offered evidence of the repayment programs that Plaintiff may be eligible for. A debtor's eligibility for an income-based repayment program is a factor which weighs against discharge of the debt. *Jesperson*, 571 F.3d at 781; *Kemp v. United States Dep't of Educ. (In re Kemp)*, 588 B.R. 226, 231 (B.A.P. 8th Cir. 2018).

According to the defendant's evidence, Plaintiff could pay $38 per month for 25 years under the Income-Based Repayment Plan or $25 per month for 20 years under the Revised Pay As You Earn program. In addition, Plaintiff's consolidation loan could be discharged in 10 years under a government program for income-based repayment for those who are employed full-time in public service or by non-profit agencies, as the plaintiff is. Plaintiff testified that she has not looked into her repayment options since she filed bankruptcy, even when the defendants offered to continue the trial to permit her to apply for the Public Service Loan Forgiveness program. Plaintiff testified unequivocally that she is unable to pay even $25 a month on the student loan, but the evidence before the court strongly suggests otherwise.

The defendants also questioned certain expenditures from Plaintiff's checking account, primarily having to do with entertainment and restaurant visits. Notwithstanding those expenditures, the defendants showed that by using actual monthly expenses instead of inflated hypothetical expenses on Schedule J, the plaintiff would presently have a positive cash flow of more than $400.00. Of course, that cash flow is subsidized by the generosity of her parents.

In any event, Plaintiff's expenses appear to be a bit of a moving target and it is quite difficult to say what her expenses will be in the future. It is possible that she could find a public school that could provide the same beneficial services as at the private school. Unfortunately, there was no evidence on that point. It is possible that her son may not need more neurotherapy treatments or such treatments may get approved by Medicaid. Again, there was no medical evidence on those issues. There was also no medical or other evidence as to whether some of the daycare and education expenses could be reduced as the children get older. Further, it is possible Plaintiff's children may qualify for benefits from Social Security due to their conditions, but Plaintiff has not applied for such benefits. Frankly, Plaintiff's true financial picture was not presented with any clarity at all.

It was clear from the plaintiff's testimony at trial that she is diligently doing her best to provide good and appropriate care for her children, given their needs. She uncomplainingly carries the additional burden of parenting these children alone, with all the struggles – large and small – that entails. Her parents' sacrifices are critical in helping to support the family, and do not go unnoticed in this forum.

Nevertheless, Plaintiff had the burden of proof. To obtain a discharge of her student loans, she had the burden of proving undue hardship by a preponderance of the evidence and the burden is rigorous. *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)). Here, there are too many questions as to available sources of income and the necessity of certain expenses to say that Plaintiff has met her burden. Given the plaintiff's age and the likelihood that she will be able to work for 25 or more years, her advanced degree, her marketable skills, her good health, as well as the lack of evidence concerning the prognoses and future prospects for her children and why the current expenses related to them are necessary, I find that Plaintiff has not met her burden of proving undue hardship by a preponderance of the evidence.

IT IS ORDERED: For the foregoing reasons, the plaintiff's complaint is denied. The student loan indebtedness owed by the plaintiff to the defendants is not subject to discharge under the provisions of 11 U.S.C. § 523(a)(8). Separate judgment will be entered.

DATED: February 25, 2020.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the Court to:
 \*Wesley Bain
 Douglas Semisch
 U.S. Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.